# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

AUGUST ALLEN FOGG,  )
 )
      Plaintiff,  )
 )
vs.  )    Case No. 13-cv-353-TLW
 )
CAROLYN W. COLVIN,  )
Acting Commissioner of Social Security,  )
 )
      Defendant.  )

## OPINION AND ORDER

Plaintiff August Allen Fogg seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 10). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 56-year old male, protectively applied for benefits under Title II on July 16, 2009, and under Title XVI on July 29, 2009. (R. 12, 105-08). Plaintiff alleged a disability onset date of January 15, 2009. (R. 105). Plaintiff claimed that he was unable to work due to hepatitis C and seizures. (R. 118). He later indicated that he also suffered panic attacks and anxiety. (R. 149). Plaintiff's claims for benefits were denied initially on January 7, 2010, and on reconsideration on July 1, 2010. (R. 50-51, 52-53, 54-62, 67-73). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on May 19, 2011. (R. 496-534). The ALJ issued a decision on August 26, 2011, finding that alcohol use was material in his case, denying benefits, and finding plaintiff not disabled because if he were to stop using alcohol, he would be able to perform other work. (R. 9-28). The Appeals Council denied review, and plaintiff appealed. (R. 1-5; Dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff had not performed any substantial gainful activity since his alleged disability onset date of January 15, 2009. (R. 15). His last insured date was determined to be December 31, 2013. (R. 14). The ALJ found that plaintiff had the severe impairments of "seizure disorder, major depressive disorder without psychotic features, panic disorder, and alcohol dependence continuous." (R. 15). Because plaintiff's substance abuse was a factor in his disability consideration, the ALJ considered plaintiff's depressive disorder, panic disorder, and

alcohol dependency together. The ALJ analyzed the "paragraph B" criteria and found that plaintiff experienced moderate restriction in activities of daily living; marked restriction in social functioning, and concentration, persistence, and pace; and no episodes of decompensation. (R. 15-16). Since the ALJ found two "marked" limitations, he found that plaintiff's impairments met the listed impairment criteria for listings 12.04 and 12.09. (R. 15).

Next, the ALJ determined that if plaintiff were to stop his substance use, he would continue to have severe impairments, but those impairments without alcohol use would not meet or equal a listed impairment. (R. 16-17). Therefore, after reviewing plaintiff's testimony, the medical evidence, and other evidence in the record, the ALJ concluded that if plaintiff stopped his substance use, he could perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: He should avoid heights, dangerous machinery and the operation of vehicles. He is able to perform simple instructions consistent with unskilled work that is repetitive and routine in nature with no significant interaction with the general public or coworkers.

(R. 17). The ALJ found that if plaintiff stopped his substance use, his residual functional capacity did not allow him to return to his past relevant work as a hair dresser (light, skilled-SVP 6). (R. 22). The ALJ found that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." Id. Therefore, at step five, the ALJ determined that if plaintiff stopped his substance use, jobs existed in significant numbers which plaintiff could perform, such as hand packer (medium exertion, unskilled-SVP 2), bench assembler (light exertion, unskilled-SVP 2), and clerical mailer (sedentary exertion, unskilled-SVP 2). Id. Accordingly, the ALJ found that since plaintiff's substance use disorder was a contributing factor

material to the determination of his disability, and plaintiff would not be disabled if he stopped his substance use, he was not disabled. (R. 23).

## ANALYSIS

Plaintiff specifically notes that he "does not take issue with any of the findings by the ALJ. Rather, he only takes issue with the conclusion that he is not disabled." (Dkt. 27 at 1). Plaintiff frames his single issue as whether the ALJ failed to properly consider his age, education, and vocational factors in light of SSR 82-63 in determining that he was not disabled.

Social Security Regulation 82-63 explains sections 404.1562 and 416.962 of the Code of Federal Regulations. These sections discuss the requirements for the two medical-vocational profiles which establish an inability to make an adjustment to other work in the national economy. See 20 C.F.R. §§ 404.1562, 416.962. SSR 82-63 specifically provides:

> The characteristics of these two profiles are: (1) marginal education and long work experience limited to arduous unskilled physical labor and (2) advanced age, limited education and no work experience.
>
> …
>
> 2. *Special "No Work Experience" Cases*
> An SSA policy decision of July 7, 1975, provided that, up to the point of advanced age, persons without work experience and those who have performed only unskilled work will be given the same consideration. Recognizing that advanced age (55 or older) is a critical point for a vocational adjustment in that a person would have much difficulty in learning and doing activities not previously performed, SSA decided that a special policy should apply to disability claimants and beneficiaries who are of advanced age and have no recent and relevant work experience.
>
> …
>
> Generally, individuals are considered as having no recent and relevant work experience when they have either performed no work activity within the 15-year period prior to the point at which the claim is being considered for adjudication, or the work activity performed within this 15-year period does not (on the basis of job content, recency, or duration) enhance present work capability.

> …
>
> Generally, the RFC to perform a wide range of light work represents sufficient capacity to engage in substantial work for the individual who is not of advanced age and can communicate, read, and write on a marginal educational level.
>
> Generally, where an individual of advanced age with no relevant work experience has a limited education or less, a finding of an inability to make a vocational adjustment to substantial work will be made, provided his or her impairment(s) is severe, i.e., significantly limits his or her physical or mental capacity to perform basic work-related functions.
>
> In the cases involving individuals of advanced age, the only medical issue is the existence of a severe medically determinable impairment. The only vocational issues are advanced age, limited education or less, and absence of relevant work experience. With affirmative findings of fact, the conclusion would generally follow that the claimant or beneficiary is under a disability. If all the criteria of this medical-vocational profile are not met, the case must be decided on the basis of the principles and definitions in the regulations, giving consideration to the rules for specific case situations in Appendix 2.

See http://www.socialsecurity.gov/OP_Home/rulings/di/02/SSR82-63-di-02.html (last visited January 28, 2013). Plaintiff argues that because he is of advanced age (defined as 55 years old and over), he possesses a limited education (defined as a 7th to 11th grade education), his prior work was skilled, and he has no transferable skills, SSR 82-63 requires a finding that he is disabled.

Plaintiff cites Morris v. Sullivan, 968 F.2d 20 (10th Cir. 1993), an unpublished table decision, to support his position. He argues that Morris "explain[s] that when a person has no skills which transfer to other work then he has no relevant work experience and the regulation may apply." (Dkt. 31 at 1-2). Plaintiff further contends that SSR 82-63 provides that if acquired work skills are not readily transferable and "make no meaningful contribution to the person's ability to do any work within his present functional capacity," then those skills may fall under the provisions of sections 404.1562 and 416.962. Id. at 2. Plaintiff also notes that Morris was

reversed because the ALJ's decision offered no indication that the medical-vocational profiles found in sections 404.1562 and 416.962 were considered.

The Court found no Tenth Circuit case law discussing this direct issue, and the Tenth Circuit cases that do discuss transferability of skills in a person of advanced age pertain to claimants with RFC exertional levels of light or sedentary rather than plaintiff's RFC of "all exertional levels." However, the Court did find the following language:

> The regulations state: 'We consider that advanced age (55 or over) is the point where age significantly affects a person's ability to do substantial gainful activity. If you are severely impaired and of advanced age *and you cannot do medium work*, you may not be able to work unless you have skills that can be used in (transferred to) less demanding jobs which exist in significant numbers in the national economy.'

Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993) (citing 20 C.F.R. § 404.1563(d)) (emphasis added). This language was in effect at this regulation's citation in 1993. Currently, this regulation applies to a person "closely approaching advanced age." 20 C.F.R. § 404.1563(e) addresses a person of advanced age, stating that "[w]e consider that at advanced age (age 55 or older) age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60-64). See § 404.1568(d)(4)." 20 C.F.R. § 404.1563(e). The referenced regulation says "[i]f you are of advanced age … and you have a severe impairment(s) *that limits you to sedentary or light work*, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work … ." 20 C.F.R. § 404.1568(d)(4) (emphasis added). The Court interprets the regulations discussed above to mean that since plaintiff is able to perform unskilled work at the medium level and above, skill transferability is not a factor that would render him disabled.

The ALJ found that if plaintiff stopped using alcohol, he could perform work at "all exertional levels," including very heavy, heavy, and medium work, and therefore transferability of skills was not an issue. (R. 22). Plaintiff does not object to this finding. Moreover, each job that the ALJ determined plaintiff would be able to perform is unskilled. Thus, the "skills" required for plaintiff's prior work are not relevant here.

While the Commissioner is held to a stricter standard when evaluating disability in someone of advanced age, the Court finds that the ALJ did not err in finding plaintiff not disabled in light of the fact that plaintiff is able to perform unskilled work at all exertional levels.

## CONCLUSION

Based on the foregoing, the Court **AFFIRMS** the decision of the Commissioner denying disability benefits to plaintiff.

SO ORDERED this 12th day of February, 2015.

_____
T. Lane Wilson
United States Magistrate Judge